T. F. TEMPLE, Respondent, v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, January 16, 1900.**

1. **Practice, Trial: JURY: EVIDENCE: WITNESSES: PRACTICE, APPELLATE: VERDICT.** The supreme law of the land has conferred upon the jury the province of determining the credibility of witnesses and the probative force of their testimony in the trial of law cases, and it is not in the power of the judges of the court to override the constitution by setting aside the verdict of a jury where there is substantial evidence to support it, however strong and countervailing the opposing evidence may seem to them.

2. **Negligence: EVIDENCE: DAMAGES.** In the case at bar the evidence is examined and held to be sufficient to support the verdict for damages.

Appeal from the Lewis Circuit Court.—*Hon. Edwin R. McKee*, Judge.

Affirmed.

*Hostetter & Jones* for appellant.

Defendant's demurrer to the evidence should have been sustained. It was conceded by all witnesses who professed any knowledge upon the subject that plaintiff's premises were low, flat, bottom lands, and subject to overflow, and that the overflow would have happened just the same whether defendant's bridge was there or not, and that there was an extraordinary and unusual flood on the night of July 4, 1897. Therefore, the defendant could not be held liable because it is apparent that the immediate and proximate cause of the overflow was an extraordinary and unusual flood. Ellet v. Railroad, 76 Mo. 518; Coleman v. Railroad, 36 Mo. App. 476. Conceding that the bridge was insufficient to carry through the drift and debris and water coming down Mills creek in such an extraordinary flood as this one was, still the evidence of all who were competent to speak on the subject was to the effect that it was sufficient during all ordinary high rises. Mr. Moss, the city engineer of Hannibal, who was subpoenaed by plaintiff, was perhaps the most competent to testify on that subject, and his testimony was very emphatic in favor of defendant on that point. There may be negligence in the construction and maintenance of the bridge, concurring with the act of God manifested in the unusual and unprecedented rainstorm, and still defendant may not be liable.

*J. J. Henderson* for respondent.

(1) The evidence and physical facts prove that the storm in question was not an unprecedented one. The evidence shows that this bridge was not constructed with care and skill, taking into consideration the area drained, its suddenness and the frequency of its rises such as the law requires. Brink v. Railroad, 17 Mo. App. 177; Coleman v. Railroad, 36 Mo. App. 476.

BLAND, P. J.—Respondent sued for damages to his growing garden crop on lots in the city of Hannibal, occasioned by an overflow, which he alleges was caused by the negligent construction, by appellant of its bridge over Mills Creek in said city. The premises overflowed and its surroundings as near as we are able to describe them, are about as follows:   The defendant's road runs east and west through the city of Hannibal; the railroad track adjacent to and north of respondent's premises is laid on a dump or fill; the respondent's premises are a part of some low lands lying immediately south of the roadbed; through the premises is a ditch or drainway which serves to carry the waters of a spring south and surface waters flowing in that direction from the surrounding lands and hills north; these waters pass under the roadway through a sixteen foot culvert and on into Mills Creek near its mouth, where it empties into Bear Creek; from this culvert one hundred or more yards west is the appellant's bridge over Mills Creek; this bridge is one hundred and fifteen feet long, with a truss span of thirty-eight feet over the main current of the stream, the remainder being built on three rows of piles driven into the earth; at the span the superstructure is about four feet above the bed of the stream; from the span west the distance of the bridge above the bed of the creek grows less and less, until it practically ceases at the west end; the channel of the creek at the time of the overflow was at or near the east end of the bridge; at and for some distance above the bridge the creek had practically no banks and spread out to a width of one hundred feet or more; above where the banks were well defined, the width was only about thirty feet; in time of freshets the creek above the bridge would spread out and over the adjacent low lands, including the respondent's premises; to prevent overflows on these lands the appellant, under the supervision of the officials of the city of Hannibal, raised Lindell avenue, which laid east of

Mills Creek and ran north and south parallel to the creek and between it and respondent's premises and extended from the railroad dump south to the city limits, by raising its grade from eighteen inches to two feet higher than respondent's premises and rocked the side next the creek and graveled the surface; east of the creek and south of the low lands (including respondent's) was a semicircular range of hills and bluffs which shed their waters on the low lands lying north; these waters passed out through the sixteen foot culvert mentioned above; seventy feet north and parallel to and on an even grade with appellant's road bed was the road of the Missouri, Kansas & Texas Railway Company; Mills Creek ran about due north under the bridge and on until it came to or near the roadway of the Missouri, Kansas & Texas Railway Company, when it turned abruptly east and continued about due east between the tracks of the two railways until it emptied into Bear Creek a short distance below the sixteen foot culvert in respondent's roadway.

The issues were submitted to a jury, who returned a verdict for respondent for $25. After an unavailing motion for new trial the railroad company appealed.

The evidence on the part of plaintiff tended to prove that the piles on which the appellant's bridge over Mills Creek was laid, caught debris coming down the stream, held it and caused sand, gravel and other material to form bars in the bed of the stream above the bridge and thus obstruct the flow of water and cause them to spread out, and that on the night of the overflow the piling and the superstructure caught a mass of rails, logs and brush and other debris brought down the creek and dammed up the water and caused it to flow over Lindell avenue and submerge the respondent's premises, and that his growing garden crop was destroyed thereby. The evidence for respondent was also to the effect that the rainfall on the occasion was a very heavy one, but not unprecedented.

On the part of the appellant the evidence was to the effect that respondent's premises were low lands, subject to overflow in times of ordinary freshets; that on this occasion the waters which did overflow his premises did not come from Mills creek across Lindell avenue, but were back waters that pushed their way through the sixteen foot culvert and over the railroad track east of the avenue.  This theory is seemingly supported by the fact that a part of the dump and track was pushed south, indicating that the pressure of the water was from the north, whereas if it had been from waters flowing over Lindell avenue the pressure would have been from the south and the track and dump would have been moved north, instead of south.

The rain came in the nighttime; no eye-witness saw or testified where the water came from that overflowed respondent's premises.  Some of the witnesses for respondent testified that they were on the low lands and in the overflow; that a part of the railroad dump east of Lindell avenue was washed out; that when this occurred the waters receded in a very few minutes.  If these witnesses are correct in their testimony, then the theory that the overflow came from the north of the track must be abandoned and the sliding of the track to the south accounted for on the theory that the dump was first undermined on the south side and the track slipped to the south instead of being forced out by the pressure of the water from the north.  These were questions of fact for the jury and were properly left to it for decision.  The appellant contends that the evidence shows that the rainfall was unprecedented.  One witness for it testified that by a gauge measure in his yard the fall in a few hours was ten to twelve inches.  A number of witnesses testified that it was a waterspout and the heaviest rainfall they had ever witnessed.  For respondent a number of witnesses who had lived in Hannibal or its vicinity twenty to forty years testified that the rainfall was not unprecedented; that on one occcasion prior Mills Creek was two

Temple v. St. Louis & Han. Ry. Co.

feet higher than on this occasion, and that while the fall was an unusual one, there had been other rains in the same vicinity of equal and some of greater magnitude. The evidence as to the character of the storm was conflicting, and properly left to the jury.

Error is assigned for the giving of four instructions for the respondent, and the refusing of three for the appellant. But appellant has failed to point out in his brief or state on oral argument wherein any error was committed in either the giving or refusing of instructions. The third instruction, the refusal of which appellant assigns as error, is identical with instruction number 10 marked as given for appellant. We are unable to perceive any reversible error in the giving or refusing of instructions. Those given appear to us to have presented the whole case fairly to the jury. At the close of respondent's evidence, and again at the close of all the evidence, appellant moved the court to instruct the jury to find for defendant. These motions the court refused to grant and this ruling is assigned as error.

From a careful reading and consideration of all the evidence the testimony to our minds preponderates in favor of the defendant (appellant), but it did not so impress the jury, whose peculiar province it was to determine the credibility of the witnesses and the probative force of their testimony. The supreme law of the land has conferred this important and controlling function in the trial of law cases to the jury, and it is not in the power of the judges of courts to override the Constitution by setting aside the verdict of a jury where there is substantial evidence to support it, however strong and countervailing the opposing evidence may seem to them. There is substantial evidence to support the verdict in this case, and discovering no reversible error in the giving or refusing of instructions, or in the admission or rejection of testimony, we affirm the judgment. All concur.